UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————
                                                    )
DOMINIC MAHER,                                      )
                                                    )
                        Plaintiff,                  )
                                                    )
            v.                                      )          Civil Action No.
                                                    )          ——————————————
HINES INTERESTS LIMITED                             )
PARTNERSHIP, SARAH HAWKINS,                         )
MATT PRIOR, JASON ALDERMAN, and                     )
TOMMY CRAIG,                                        )
                                                    )
                        Defendants.                 )
———————————————————————)

## COMPLAINT AND JURY DEMAND

## PARTIES

1.      The Plaintiff, Dominic Maher ("Mr. Maher" or the "Plaintiff"), is a male resident of New York who was born in 1963.  Mr. Maher resides at 3316 81 St. in the borough of Queens in New York, New York.

2.      Defendant Hines Interests Limited Partnership ("Hines" or the "Company") is a for-profit corporation doing business in the state of New York.  The Company's principal office is located at 845 Texas Avenue, Suite 3300, Houston, Texas 77002.

3.      Defendant Sarah Hawkins ("Hawkins") is an adult female who, upon information and belief, resides in the state of New York.

4.      Defendant Matt Prior ("Prior") is an adult male who, upon information and belief, resides in the state of Texas.

5.      Defendant Jason Alderman ("Alderman") is an adult male who, upon information and belief, resides in the state of New York.

6.      Defendant Tommy Craig ("Craig") is an adult male who, upon information and belief, resides in Connecticut.

## JURISDICTION AND VENUE

7.      The court has subject matter jurisdiction under 28 U.S.C. §1331 because Mr. Maher has brought a claim pursuant to Title VII (42 U.S.C. §§ 2000e et seq) and the Age Discrimination in Employment Act (the "ADEA") ( 29 U.S.C. §§ 621 et seq.).  The court may exercise supplemental jurisdiction over Mr. Maher's state and city law claims.  28 U.S.C. §1367.

8.      Venue is appropriate in the Southern District of New York as the acts or omissions giving rise to the claims in this Complaint occurred in the Southern District of New York.  Additionally, the Plaintiff resides within the Southern District of New York.

9.      This court has jurisdiction over the Company because Company has engaged in and transacted business in the State of New York, including by managing and/or operating a business in New York and/or employing Mr. Maher in New York, and Mr. Maher's causes of action stem largely from the Company's business transactions within the State of New York. Indeed, Mr. Maher was employed by the Company in the State of New York, was managed and supervised by the Company in the State of New York, was discriminated against and harassed by the Company in the State of New York and was terminated by the Company in the State of New York.

10.      Further, this Court has personal jurisdiction over Hawkins because Hawkins is a resident of the state of New York.   Further, Hawkins has engaged in and transacted business in the State of New York, including by managing and/or operating a business (the Company) in New York and/or employing Mr. Maher (via the Company) in New York, and Mr. Maher's causes of action stem largely from Hawkins's business transactions within the State of New

York.  Indeed, Mr. Maher was employed by the Company (of which Hawkins was the CEO, East Region) in the State of New York, was managed and supervised by Hawkins in the State of New York, was discriminated against and harassed by Hawkins in the State of New York and was terminated by Hawkins in the State of New York.

11.     Further, this Court has personal jurisdiction over Prior because Prior engaged in and transacted business in the State of New York, including by managing employees in New York, including Mr. Maher (via the Company) in New York, and Mr. Maher's causes of action stem largely from Prior's business transactions within the State of New York.  Indeed, Mr. Maher directed protected concerns to Prior while in New York and/or relating to his New York employment.  Further, Mr. Maher was employed by the Company in the State of New York, was managed and/or supervised by Prior in the State of New York, was discriminated against and harassed by Prior in the State of New York and was terminated by Prior in the State of New York.

12.     Further, this Court has personal jurisdiction over Alderman because Alderman is a resident of the state of New York.   Further, Alderman has engaged in and transacted business in the State of New York, including by managing and/or operating a business (the Company) in New York and/or employing Mr. Maher (via the Company) in New York, and Mr. Maher's causes of action stem largely from Alderman's business transactions within the State of New York.  Indeed, Mr. Maher was employed by the Company (of which was Alderman was the Senior Managing Director for the New York city office) in the State of New York, was managed and supervised by Alderman in the State of New York, was discriminated against and harassed by Alderman in the State of New York and was terminated by Alderman in the State of New York.

13.     Further, this Court has personal jurisdiction over Craig because Craig has engaged in and transacted business in the State of New York, including by managing and/or operating a business (the Company) in New York and/or employing Mr. Maher (via the Company) in New York, and Mr. Maher's causes of action stem largely from Craig's business transactions within the State of New York.  Indeed, Mr. Maher was employed by the Company in the State of New York, was managed and supervised by Craig in the State of New York, was discriminated against and harassed by Craig in the State of New York and was terminated by Craig in the State of New York.

## STATEMENT OF FACTS

14.     On or around October 24, 2014, Mr. Maher was hired by the Company as a Project Manager in Manhattan, New York.

15.     At all relevant times, Mr. Maher was over 40 years old and was a homosexual man in terms of his sexual orientation.

16.     At all relevant times, the Company employed 20 or more employees for 20 or more calendar weeks within the last 12 months.

17.     Indeed, at all relevant times, the Company employed more than 500 employees.

18.     As such, the Company is an employer under the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act ("Title VII"), the New York State Human Rights Law, and New York City Human Rights Law.

19.     Importantly, Mr. Maher did not disclose his sexual orientation prior to his hiring with the Company.

20.     At all relevant times, Mr. Maher was a qualified employee, and his performance was satisfactory. Indeed, Mr. Maher frequently received extremely high praise in his annual reviews, including being called a "miracle worker" for his exemplary work on a project in 2021.

21.     Indeed, on or around June 5, 2015, due to Mr. Maher's consistently strong performance, he was promoted to Vice President. Subsequently, on or around June 7, 2017, Mr. Maher was promoted again to Managing Director.

22.     After Mr. Maher's promotion, he brought a project to completion earning a completion bonus of $575,000 for his outstanding contribution, while simultaneously spearheading an $81 million Builders Risk Insurance Claim and was also assigned to a new project (the "139 East 56 Street project").

23.     Also assigned to the 139 East 56 Street project were Sarah Hawkins ("Hawkins"), Managing Director, and Bevin Littlehale ("Littlehale"), a recently hired assistant / associate, who had little to no experience working on similar projects.

24.     Hawkins is approximately twenty years younger than Mr. Maher, and, upon information and belief, Hawkins is heterosexual.

25.     Littlehale is approximately twenty-five years younger than Mr. Maher, and, upon information and belief, is heterosexual.

26.     In or around 2018, Hawkins was promoted to Regional Head Director.

27.     Following this promotion, Hawkins served in a supervisory role over Mr. Maher.

28.     Following Hawkins' promotion, Matt Herson ("Herson"), Managing Director, was made the lead Managing Director on the 139 East 56 Street project.

29.     On or around May 22, 2019, Littlehale was promoted to Managing Director. Importantly, the Company denied Mr. Maher a promotion to Managing Director that he deserved in order to promote the less deserving younger heterosexual Littlehale instead.

30.     Notably, Mr. Maher had approximately three decades of additional experience over Littlehale and was substantially more qualified for the open position. Indeed, Littlehale held less than nine months of experience on a 3-year assignment (as an Associate / Director), and lacked the necessary technical, design, and contract negotiation skills. Further, upon information and belief, Littlehale had not previously delivered a complex project.

31.     In or around 2019, while progress on the 139 East 56 Street project was still underway, Littlehale and Mr. Maher were subsequently assigned to an additional project (the "2330 Broadway Project") with Welltower Inc. ("Welltower").

32.     Notably, prior to being assigned to the 2330 Broadway Project, the project had been severely overbudget and was at risk of being terminated.   When assigning Mr. Maher to the project, Hawkins demanded Mr. Maher take a senior leadership role and lower the costs of the project.

33.     Within months, Mr. Maher reduced the project budget by approximately 12% and played a substantial role in getting the project in good shape.

34.     Despite this, and despite Mr. Maher's superior qualifications, Littlehale was promoted to the Managing Director of the 2330 Broadway project, while Mr. Maher was assigned to an assistant role.

35.     Also assigned to this project was Tyler Swiggett ("Swiggett"), an entry-level project assistant who was in a subordinate position to Mr. Maher in the corporate hierarchy.

36.     Swiggett was approximately thirty years younger than Mr. Maher, and, upon information and belief, Swiggett is heterosexual.

37.     Throughout Mr. Maher's tenure working with Craig, the Senior Managing Director and Head of the Company's New York Office until December 2022 and Mr. Maher's supervisor, Mr. Maher was subjected to consistent, homophobic and sexually harassing language.

38.     Upon information and belief, Craig is heterosexual.

39.     For example, Craig frequently asserted Mr. Maher was "gay" in an insulting and belittling tone, and permitting others, to call Mr. Maher gay using a negative tone and manner.

40.     Based on the insulting nature and tone of Craig's comments and derogatory remarks, it was clear that Craig viewed homosexuals negatively. Further, as Mr. Maher had not disclosed to Craig his sexual orientation at this time, it was clear Craig was making these comments to insult Mr. Maher, not as an acknowledgement of Mr. Maher's sexual orientation.

41.     During the COVID epidemic, the Company operated on an entirely remote basis via Zoom calls and meetings (commonly referred to as "Townhall Zoom meetings").

42.     Throughout these Townhall Zoom meetings, where hundreds of employees were in attendance, Craig occasionally berated Mr. Maher with homophobic slurs, insinuating that he (Mr. Maher) was homosexual, even though Mr. Maher had not openly divulged this information at this juncture.

43.     For example, on or around May 8, 2020, Craig humiliated Mr. Maher in front of an entire Townhall Zoom meeting, stating "come out of the closet Dominic" and "let this be your outing moment Dominic."

44.     On or around July 28, 2021, Littlehale was further promoted to a Managing Director position in the Company's Boston office location.

45.     Subsequently, Swiggett (an associate) was promoted to head the project over Mr. Maher.

46.     Notably, Mr. Maher had almost 3 decades of experience over Swiggett and was more qualified for the position.  Furthermore, Swiggett, as an associate/director, lacked the authority to head the project and could not perform the duties necessary to head the project.

47.     On or around April 15, 2021, Hawkins announced that Jason Alderman ("Alderman") would replace Craig as head of the New York Office on December 31, 2022, at which time Craig would retire.

48.     Hawkins further explained that, in the interim until Craig's retirement, both Craig and Alderman would cohead the New York Office.

49.     In 2020, Mr. Maher arranged to have two children through surrogate mothers.

50.     Shortly thereafter, Mr. Maher disclosed to the Company that he was having a child and expected to need approximately two weeks of time off in or around early May 2021 to bond with his newborn baby.

51.     At all relevant times, Mr. Maher had worked 1,250 hours or more in the prior 12 months and had been employed by the Company for more than 12 months.  Furthermore, at all relevant times, Mr. Maher was based out of a worksite in which 50 or more employees were employed and/or 50 or more employees were employed within 75 miles of said worksite.

52.     As such, at all relevant times, Mr. Maher was entitled to FMLA protected leave.

53.     Indeed, Mr. Maher was provided with FMLA paperwork, which he promptly filled out and returned to the Company.  The Company ultimately approved Mr. Maher's FMLA leave.

54.     On May 5, 2021, Mr. Maher's son was born to a surrogate mother.

55.     From approximately May 1, 2021 to May 15, 2021, Mr. Maher was on FMLA-protected leave to bond with his baby.  Notably, this leave was also protected under New York state and city law.

56.     On or around May 7, 2021, Mr. Maher had a video conference with Senior Managing Director and Head of the New York Office Craig, during which Mr. Maher announced the birth of his son.

57.     Also present during this video conference was Hawkins, Regional Head Director and Craig's supervisor.

58.     Shockingly, rather than respond with a congratulatory message, Craig launched into a diatribe of offensive remarks, including "that is not your son," "that has to be the child of another man," "that cannot be your son," and "Amanda" (who was the surrogate) "must have had an affair with another man and that is the child of the other man."

59.     It was clear Craig's discriminatory and harassing treatment was due to his perception of Mr. Maher's sexual orientation. Indeed, Craig continued to subject Mr. Maher to demeaning, discriminatory, and disparate treatment throughout the remainder of his (Mr. Maher's) employment.

60.     Importantly, at the time of Craig's conference, Mr. Maher had not disclosed that his son was born via surrogacy.

61.     To avoid the recurrence of Craig's humiliation, Mr. Maher did not immediately disclose the birth of his daughter (born three months later, in or around July 29, 2021).

62.     On or around February 15, 2022, Mr. Maher disclosed to Hawkins that he was homosexual.  Mr. Maher further explained that, in addition to his son, he also had a daughter born on July 27, 2021, and both of his children were born through surrogacy.

63.     On or around March 2, 2022, fatigued by Craig's discriminatory comments, Mr. Maher revealed to Craig that he (Mr. Maher) was homosexual, and also had a daughter born on July 29, 2021.  Mr. Maher disclosed that both of his children were born through surrogacy.

64.     Notably, shortly after Mr. Maher disclosed his sexual orientation, Craig suddenly retracted his acceptance of an invitation to attend a work-related conference in Dublin, Ireland, with Mr. Maher.

65.     Notably, Mr. Maher had been arranging this conference with Dublin University for approximately two years.

66.     Indeed, after years of preparation, Mr. Maher established a two-day conference in Dublin, where Craig would deliver a series of lectures within Dublin University. Mr. Maher had even arranged an honorary PhD to be bestowed upon Craig for his support of the University.

67.     Furthermore, on or around May 4, 2022, within two months of Mr. Maher disclosing his sexual orientation to Craig and Hawkins, Mr. Maher was suddenly informed by Craig that he (Mr. Maher) would be terminated by the end of the year (i.e. December 31, 2022), well ahead of the completion date for the project he (Mr. Maher) was working on.

68.     This was shocking, as Mr. Maher had never received any discipline, warnings, or other indications that his performance was anything less than excellent.

69.    After Mr. Maher raised concerns about the termination, Craig directed Mr. Maher to instead speak with Hawkins and Alderman in regard to any concerns Mr. Maher might have.

70.    Alderman is approximately fifteen years younger than Mr. Maher, and, upon information and belief, Alderman is heterosexual.

71.    Alarmed by the discriminatory and retaliatory treatment he (Mr. Maher) had been subjected to by Craig, Mr. Maher made several attempts to contact Alderman.  Despite these attempts, Mr. Maher consistently received no response.

72.    Mr. Maher subsequently communicated to Hawkins that he wanted to discuss this issue further.

73.    Hawkins agreed and Mr. Maher scheduled a time to meet with her on or around May 26, 2022.

74.    On or around May 26, 2022, Mr. Maher met with Hawkins and raised protected concerns regarding the harassing and discriminatory treatment he had been subjected to under Craig, as well as the seemingly discriminatory nature of his (Mr. Maher's) apparent termination.

75.    Despite this, Hawkins was dismissive of Mr. Maher's raised concerns and did not meaningfully address any of Mr. Maher's raised concerns within the meeting.

76.    Weirdly, Hawkins stated that no layoff plans were in place, contradicting Craig's termination notice on May 4.  This appeared to indicate that Mr. Maher might not be terminated after all.

77.    During this conversation, Mr. Maher raised protected concerns to Hawkins, including concerns regarding the offensive remarks Craig made on or around May 7, 2021 upon learning of the birth of Mr. Maher's son.

78.     Hawkins acknowledged that she recalled the disrespectful incident (i.e., Craig's actions and comments on or around May 7, 2021 related to the birth of Mr. Maher's son Louis), but suggested the best course of action would be Mr. Maher speaking with Craig.

79.     Hawkins further indicated she had encountered similar inappropriate behaviors by Craig in the past.

80.     On or around June 6, 2022, Mr. Maher reached out to Andrew Cooke ("Cooke"), Senior Vice President of Operations (East Region), to reiterate his (Mr. Maher's) protected concerns.

81.     At this time, the working environment under Craig and Alderman had become toxic and untenable.

82.     Given this, Mr. Maher discussed the possibility with Cooke of finding an alternative position within the Company so he could continue his employment and provide for his two children as a single father of two surrogate children.

83.     Notably, although he made clear that he preferred to stay in a role earning his current salary, Mr. Maher made clear that, if it was necessary to maintain his employment given the bias of his current managers, he was willing to engage in a transition would entail a voluntary demotion and significant pay cut.

84.     Cooke is approximately fifteen years younger than Mr. Maher, and, upon information and belief, Cooke is heterosexual.

85.     Within this conversation, Cooke appeared sympathetic to Mr. Maher's raised protected concerns, and encouraged Mr. Maher to raise these concerns directly with HR Business Partner Nami Liberboim ("Liberboim")

86.    Liberboim is approximately fifteen years younger than Mr. Maher, and, upon information and belief, Liberboim is heterosexual.

87.    On or around June 9, 2022, Cooke informed Mr. Maher that he (Cooke) had already disclosed Mr. Maher's protected concerns to Liberboim, as he stated he was required to do whenever he heard anything that went against the Company's values.

88.    Shortly thereafter, Liberboim contacted Mr. Maher to allegedly discuss Mr. Maher's concerns. Despite this, Liberboim took no meaningful actions to address Mr. Maher's concerns and Mr. Maher continued to be subjected to discriminatory and harassing treatment.

89.    After several months of Mr. Maher being stonewalled while attempting to engage and work with Alderman, the Co-Head of the office, on or around June 16, 2022, Alderman told Swigget, Kemp, and Skjøtt that he had no intention of communicating with Mr. Maher.

90.    Alderman further stated he had considered reaching out to Hawkins to ask her to stop Mr. Maher's attempts to communicate with him.

91.    As such, it appeared clear Alderman was unwilling to address Mr. Maher's protected concerns or the discriminatory, harassing, and retaliatory treatment he had been subjected to.

92.    On or around June 23, 2022, Mr. Maher reiterated his protected concerns (including his concerns relating to Craig's clearly discriminatory and harassing comments (relating to his sexual orientation) and seemingly discriminatory bias against him to Matt Prior ("Prior"), the Senior Director of Employee Relations.

93.    Prior is approximately ten years younger than Mr. Maher, and, upon information and belief, Prior is heterosexual.

94.     On or around August 1, 2022, Hawkins reached out to Mr. Maher to indicate she had been informed of Mr. Maher's raised protected concerns.

95.     Hawkins made it clear Mr. Maher should drop the protected concerns, including by asserting Craig's comments were not meant to be offensive and were all in good fun.

96.     She then invited Mr. Maher to have a reconciliation meeting with Craig to reset the relationship.

97.     Notably, as Hawkins was aware, Mr. Maher had already attempted to reset the relationship with Craig, only to be told by Craig that he (Craig) did not care and it was Mr. Maher's problem.  Shocked by this dismissal of his (Mr. Maher's) protected concerns and blatant attempt at sweeping his concerns under the rug, Mr. Maher declined such an invitation.

98.     In addition, despite informing Mr. Maher that his position would be protected *at least* until the end of the 2330 Broadway project, Hawkins pivoted her position and offered six months severance if Mr. Maher tendered his immediate resignation.

99.     Mr. Maher immediately rejected this resignation suggestion.

100.     In this same meeting, Hawkins also stated she had "accidentally" shuffled the reporting structure several months ago and incidentally had demoted Mr. Maher, leaving Mr. Maher reporting to Dean Fracassini ("Fracassini"), a senior Vice President.

101.     Notably, this was the first time Mr. Maher had been made aware of this demotion.

102.     Despite this, Hawkins instructed Mr. Maher to continue reporting to Alderman and function in a Managing Directors role pursuing new business and not in a Vice President position.

103.    In a subsequent meeting on August 2, 2022, attended by Alderman, Hawkins, and Mr. Maher, Alderman apologized for his (Mr. Maher's) several months of ostracization and for stonewalling Mr. Maher.

104.    During this meeting, Alderman advised Mr. Maher that Craig and Fracassini had directed him (Alderman) to avoid all forms of communication with Mr. Maher and he duly complied with that discriminatory direction.

105.    On August 9, 2022, Mr. Maher was informed by Littlehale that she had requested Craig assign Mr. Maher to work on the Boston Project.  In this same conversation, Littlehale informed Mr. Maher that he (Mr. Maher) would receive a project completion bonus of $300,000 for the 2330 Broadway Project.

106.    Indeed, Littlehale stated she needed Mr. Maher's assistance on the project due to Mr. Maher's experience and skill set. Littlehale informed Mr. Maher that Craig ignored her request.

107.    On or around August 11, 2022, shortly thereafter, Mr. Maher was provided a letter from Prior. In that letter, Prior stated that Mr. Maher's "employment is not ending in December 2022" and he would remain an employee until *at least* May 2023.

108.    Importantly, the letter further noted, "[b]etween now and May 2023, we will try to staff you on a new Hines project, for which you are a good fit" and made it further clear that Mr. Maher's employment would continue should a suitable project manifest.

109.    On November 15, 2022, Prior again emailed Mr. Maher to report the conclusion of the investigation.

110.    Prior noted there was evidence Mr. Maher "could have been managed better" and assured Mr. Maher his "work will be managed in a more professional manner going forward."

Despite this, Prior alleged the investigation had concluded and found no "violations of Hines' workplace policies."

111.    Upon information and belief, during the investigation, Hawkins acknowledged it was entirely possible Craig said something offensive to Mr. Maher, but Hawkins excused this by asserting it was intended as a "joke."

112.    On or around April 3, 2023, Swiggett announced the 2330 Broadway project was officially completed and the first tranche of project bonuses would be issued in the July paychecks.

113.    Importantly, as of April 3, 2023, the $300,000 project completion bonus that had been promised to Mr. Maher in or around August 2022 had been fully earned by Mr. Maher.

114.    On or around April 3, 2023, Mike Ferry ("Ferry"), Senior VP of Welltower with whom Swiggett and Mr. Maher worked regarding their current project, called Mr. Maher to express concerns about older, tenured employees being laid off by the Company or transferred to worse positions.

115.    Ferry is approximately ten years younger than Mr. Maher, and, upon information and belief, Ferry is heterosexual.

116.    Ferry also voiced concerns that he was extremely dissatisfied with Swiggett's performance. Ferry then inquired whether Mr. Maher would be staying on the project, as he was not comfortable with Swiggett's inexperience and lack of leadership and believed Mr. Maher's continued involvement was important.

117.    Ferry further indicated Swiggett had allowed discrepancies in the approved staff billing.

118.    On or around April 24, 2023, Alderman expressed he understood Mr. Maher's current project would not be completed by May, and extended Mr. Maher's employment from May 2023 until at least August 2023, with the ability to continue employment beyond that if another project arose.

119.    Notably, as Mr. Maher had expressed to the Company on numerous occasions, Mr. Maher did not believe that the current project would realistically wrap up until September 2023 at the earliest due to the delays from Swiggett's inexperience and the amount of outstanding work necessary.

120.    At this time, Mr. Maher also made Alderman aware of Ferry's expressed discontent with Swiggett's leadership on the project.

121.    On or around April 25, 2023, Littlehale called Mr. Maher to discuss Mr. Maher's current project and review Swiggett's shortcomings.

122.    Littlehale agreed that Swiggett's performance had been drastically lacking.

123.    On or around April 27, 2023, Mr. Maher met with Swiggett (at the behest of Littlehale, Alderman, and Ferry) to discuss the dissatisfaction expressed by Welltower, Ferry, Alderman, and Littlehale regarding Swiggett's performance.

124.    In or around May 2023, Mr. Maher's current project was still under development, and he was not laid off by the Company.

125.    In or around July 2023, Mr. Maher was paid one third of the project completion bonus (i.e., $100,000 out of the $300,000 total).

126.    In or around July 2023, alarmed by comments Swiggett made during a call with Welltower, Ferry called Alderman and Littlehale to raise concerns and express his anger that no senior Hines employee was leading the agreement. Similarly, Ferry contacted Mr. Maher to

express his frustration with Swiggett and express that Swiggett was the single greatest obstacle to securing the Access Agreement with Neighbor Naftali.

127.     On or around August 4, 2023, Ferry again called Mr. Maher and again stated he lacked confidence in Swiggett's ability to lead.  Importantly, Ferry likewise called a number of senior employees at Hines to raise concerns and express dissatisfaction with Swiggett's performance.

128.     On or around August 12, 2023, Mr. Maher was informed by Steven Diroff ("Diroff"), a project assistant and Mr. Maher's subordinate, that the Company had received a new project ("1211 Avenue of the Americas").

129.     Diroff is approximately twenty years younger than Mr. Maher, and, upon information and belief, Diroff is heterosexual.

130.     Importantly, Diroff disclosed this project to Mr. Maher because Diroff had been reassigned to the project.

131.     Notably, this project was for an office remodel and was in line with Mr. Maher's experience, skillset, and past project history.

132.     Given Mr. Maher's qualifications for the project and the August 11, 2022 letter, it seemed clear Mr. Maher should have been assigned to this project, with his employment continuing.

133.     On or around August 14, 2023, Alderman emailed Mr. Maher, offering to extend his employment through the end of September 2023. Alderman reasoned that Mr. Maher's experience was further needed to complete and finalize the 2330 Broadway project.

134.    In addition to offering to extend Mr. Maher's employment, Alderman threatened that the Company would revoke its prior severance offer to Mr. Maher if the 2330 Broadway project was not completed in the near future.

135.    That same day, Mr. Maher raised additional protected concerns to Alderman that he (Mr. Maher) was not assigned to work on the 1211 Avenue of Americas project and further expressed that it seemed clear he (Mr. Maher) was not assigned this project in retaliation for the protected harassment concerns he raised, including the concerns regarding Craig.

136.    Rather than respond to Mr. Maher's further raised protected concerns, Alderman retaliated by suddenly asserting the Company has "made the decision to move forward with the separation of your employment at Hines effective as of 8/31/23."

137.    In other words, the Company suddenly pivoted from its assertion (just one day before) of extending Mr. Maher's employment until at least the end of September, and instead suddenly fired Mr. Maher.

138.    During this same conversation, Alderman suddenly declared Mr. Maher would not receive any further payments for the project completion bonus (which Mr. Maher had earned as of April 2023).

139.    Likewise, the Company refused to transfer Mr. Maher to the 1211 Avenue of Americas project and, instead, placed the younger, heterosexual (and significantly less qualified) Swiggett and Diroff on the project.

140.    As such, Mr. Maher was involuntarily terminated on or around August 31, 2023.

141.    Mr. Maher's alleged termination reasoning was farcical, given that a suitable project manifested (the 1211 Avenue of Americas project), which Mr. Maher should have been assigned to as per the agreement in the August 11, 2022 letter.

142.    Indeed, it's clear this proffered reason is pretext to conceal the Company's discriminatory and retaliatory motivations.

143.    Following Mr. Maher's unlawful termination, Mr. Maher did not (and still has not) received the remaining payments owed from the project completion bonus.

144.    On or around April 19, 2024, Mr. Maher timely filed a Charge of Discrimination (the "Charge") with the New York City Commission on Human Rights ("NYCCHR") (Charge No. M-E-AP-24-137720) and the United States Equal Employment Opportunity Commission ("EEOC") (Charge No. 16F-2024-00108).

145.    On November 13, 2024, Mr. Maher requested an administrative convenience dismissal from the NYCCHR.

146.    On or around November 19, 2024, the NYCCHR released its jurisdiction.

147.    Mr. Maher subsequently notified the EEOC of his intent to file a complaint in court and, accordingly, requested that the EEOC provide a right to sue letter and permit Mr. Maher to file in court.

148.    The EEOC issued a Right to Sue notice on or around December 6, 2024.

149.    This Complaint is timely filed in compliance with the timeframes of relevant laws and requirements.

## COUNT I

**(Age Discrimination in Violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Mr. Maher v. All Defendants (Hines, Hawkins, Prior, Alderman, and Craig)**

150.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

151.    The Company is an employer under the definition of Title 8 of The Administrative Code of the City of New York ("NYCHRL") because, at all relevant times, it employed four or more persons.

152.    At all relevant times, Mr. Maher was over 40 years old.

153.    The Defendants, by and through their agents harassed and discriminated against Mr. Maher with respect to his compensation, terms, conditions, and/or privileges of employment, because of Mr. Maher's age.

154.    More specifically, the Defendants subjected Mr. Maher to adverse actions because of his age, including, but not limited to, subjecting Mr. Maher to a harassing and otherwise hostile work environment, failing to promote Mr. Maher into one or more leadership roles for which he was qualified, demoting Mr. Maher, not assigning Mr. Maher to an additional project, and/or terminating Mr. Maher's employment.

155.    Upon information and belief, the Defendants replaced Mr. Maher with a lesser or similarly qualified, younger employee.

156.    Hawkins discharged, expelled, barred, and/or discriminated against Mr. Maher in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Maher under the NYCHRL.  Hawkins further aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYCHRL.

157.    Prior discharged, expelled, barred, and/or discriminated against Mr. Maher in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr.

Maher under the NYCHRL.  Prior further aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYCHRL.

158.    Alderman discharged, expelled, barred, and/or discriminated against Mr. Maher in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Maher under the NYCHRL.  Alderman further aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYCHRL.

159.    Craig discharged, expelled, barred, and/or discriminated against Mr. Maher in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Maher under the NYCHRL.  Craig further aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYCHRL

160.    Defendants' have engaged in discrimination with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

161.    As a direct and proximate result of the Defendants' violation of the NYCHRL, Mr. Maher has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

162.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory

damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, reinstatement with full benefits and seniority, attorneys' fees, interest, and costs.

## COUNT II

**(Discrimination Based on Age in Violation of New York State Human Rights Law, Executive Law Article 15, Section 296)**

**Mr. Maher v. All Defendants (Hines, Hawkins, Prior, Alderman, and Craig)**

163.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

164.    At all relevant times, the Company was an employer in the State of New York, including because they employed employees in the State of New York.

165.    The Company is an employer under the definition of Executive Law Article 15 ("NYSHRL").

166.    At all relevant times, Mr. Maher was over 40-years old.

167.    The Company, by and through their agents, harassed and discriminated against Mr. Maher with respect to his compensation, terms, conditions, or privileges of employment because of Mr. Maher's age.

168.    More specifically, the Company subjected Mr. Maher to adverse actions because of his age, including, but not limited to, subjecting Mr. Maher to a harassing and otherwise hostile work environment, failing to promote Mr. Maher into one or more leadership roles for which he was qualified, demoting Mr. Maher, not assigning Mr. Maher to an additional project, and/or terminating Mr. Maher's employment.

169.     The Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Mr. Maher and/or conduct so reckless to amount to such disregard.

170.     As a direct and proximate result of the Defendants' violations of the NYSHRL, Mr. Maher has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary damages, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

171.     Mr. Maher seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), emotional distress damages, punitive damages, reinstatement with full benefits and seniority, attorneys' fees, interest, and costs.

### COUNT III

**(Age Discrimination in Violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq.)**

### Mr. Maher v. the Company

172.     Mr. Maher incorporates all paragraphs above and below as if set forth fully herein.

173.     At all relevant times, Mr. Maher was over 40 years old.

174.     During all relevant times, the Company was an employer under definition of the Age Discrimination in Employment Act, 29 U.S.C. §§621 et. seq. (hereinafter the "ADEA")

because it employed more than 20 persons for 20 or more calendar weeks within the previous 12-month period.

175.    At all relevant times, Mr. Maher was over 40-years old.

176.    The Company, by and through their agents, harassed and discriminated against Mr. Maher with respect to his compensation, terms, conditions, or privileges of employment because of Mr. Maher's age.

177.    More specifically, the Company subjected Mr. Maher to adverse actions because of his age, including, but not limited to, subjecting Mr. Maher to a harassing and otherwise hostile work environment, failing to promote Mr. Maher into one or more leadership roles for which he was qualified, demoting Mr. Maher, not assigning Mr. Maher to an additional project, and/or terminating Mr. Maher's employment.

178.    The Company willfully violated the ADEA because the Company knew or should have known its conduct was prohibited by Federal law and/or the Company acted with malice and/or reckless indifference to the federally protected rights of Mr. Maher.

179.    As a direct and proximate result of the Company's violation of the ADEA, Mr. Maher has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

180.    Mr. Maher seeks all damages to which he is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses),

liquidated damages, reinstatement with full benefits and seniority, interest, attorney's fees, and costs.

## COUNT IV

**(Sexual Orientation Discrimination and Harassment in Violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Mr. Maher v. All Defendants (Hines, Hawkins, Prior, Alderman, and Craig)**

181.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

182.     At all relevant times, Mr. Maher was a homosexual man and/or a homosexual man with children born through surrogacy.

183.     The Defendants, by and through their agents harassed and discriminated against Mr. Maher with respect to his compensation, terms, conditions, and/or privileges of employment, because of Mr. Maher's sexual orientation.

184.     More specifically, the Defendants subjected Mr. Maher to adverse actions because of his sexual orientation, including, but not limited to, subjecting Mr. Maher to a harassing and otherwise hostile work environment, failing to promote Mr. Maher into one or more leadership roles for which he was qualified, demoting Mr. Maher, not assigning Mr. Maher to an additional project, and/or terminating Mr. Maher's employment.

185.     Upon information and belief, the Defendants replaced Mr. Maher with a lesser or similarly qualified, heterosexual employee.

186.     Hawkins discharged, expelled, barred, and/or discriminated against Mr. Maher in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Maher under the NYCHRL.  Hawkins further aided, abetted, incited, coerced, and/or compelled

the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYCHRL.

187.    Prior discharged, expelled, barred, and/or discriminated against Mr. Maher in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Maher under the NYCHRL.  Prior further aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYCHRL.

188.    Alderman discharged, expelled, barred, and/or discriminated against Mr. Maher in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Maher under the NYCHRL.  Alderman further aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYCHRL.

189.    Craig discharged, expelled, barred, and/or discriminated against Mr. Maher in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Maher under the NYCHRL.  Craig futher aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYCHRL.

190.    Defendants' have engaged in discrimination with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

191.    As a direct and proximate result of the Defendants' violation of the NYCHRL, Mr. Maher has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

192.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, reinstatement with full benefits and seniority, attorneys' fees, interest, and costs.

## COUNT V

**(Sexual Orientation Discrimination and Harassment in Violation of New York State Human Rights Law, Executive Law Article 15, Section 296)**

**Mr. Maher v. All Defendants (Hines, Hawkins, Prior, Alderman, and Craig)**

193.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

194.    The Defendants, by and through their agents, harassed and discriminated against Mr. Maher with respect to his compensation, terms, conditions, or privileges of employment because of Mr. Maher's sexual orientation.

195.    More specifically, the Company subjected Mr. Maher to adverse actions because of his sexual orientation, including, but not limited to, subjecting Mr. Maher to a harassing and otherwise hostile work environment, failing to promote Mr. Maher into one or more leadership roles for which he was qualified, demoting Mr. Maher, not assigning Mr. Maher to an additional project, and/or terminating Mr. Maher's employment.

196.    The Defendants' actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Mr. Maher and/or conduct so reckless to amount to such disregard.

197.    As a direct and proximate result of the Company's violations of NYSHRL, Mr. Maher has suffered and continue to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

198.    Mr. Maher seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, reinstatement with full benefits and seniority, attorneys' fees, interest, and costs.

**COUNT VI**

**(Sex Discrimination (Via Sexual Orientation) in Violation of Title VII)**

**Plaintiff v. the Company**

199.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

200.    At all relevant times, Mr. Maher was a homosexual man.

201.    The Defendants, by and through their agents harassed and discriminated against Mr. Maher with respect to his compensation, terms, conditions, and/or privileges of employment,

because of Mr. Maher's sex (including through his sexual orientation) and/or because he was a homosexual male.

202.    More specifically, the Defendants subjected Mr. Maher to adverse actions because of his sex (including through his sexual orientation) and/or because he was a homosexual male, including, but not limited to, subjecting Mr. Maher to a harassing and otherwise hostile work environment, failing to promote Mr. Maher into one or more leadership roles for which he was qualified, demoting Mr. Maher, not assigning Mr. Maher to an additional project, and/or terminating Mr. Maher's employment.

203.    Upon information and belief, the Defendants replaced Mr. Maher with a lesser or similarly qualified, heterosexual employee.

204.    The Company acted with malice and/or reckless indifference to the federally protected rights of Mr. Maher.

205.    As a direct and proximate result of the Company's violations of Title VII, Mr. Maher has suffered and continue to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

206.    Mr. Maher seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, reinstatement with full benefits and seniority, attorneys' fees, interest, and costs,

## COUNT VII

**(Retaliation for Engaging in Protected Activity in Violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Mr. Maher v. All Defendants (Hines, Hawkins, Prior, Alderman, and Craig)**

207.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

208.    Mr. Maher engaged in protected activity under the NYCHRL, including, but not limited to, opposing, voicing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Defendants due to Mr. Maher's sexual orientation and/or age.

209.    The Defendants discriminated against and/or retaliated against Mr. Maher for opposing one or more acts or practices made unlawful by the NYCHRL, including, but not limited to, the aforementioned protected activity, by subjecting Mr. Maher to a harassing and otherwise hostile work environment, failing to promote Mr. Maher into one or more leadership roles for which he was qualified, demoting Mr. Maher, not assigning Mr. Maher to an additional project, and/or terminating Mr. Maher's employment.

210.    Hawkins discharged, expelled, barred, and/or discriminated against Mr. Maher in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Maher under the NYCHRL.  Hawkins further aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYCHRL.

211.    Prior discharged, expelled, barred, and/or discriminated against Mr. Maher in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr.

Maher under the NYCHRL.  Prior further aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYCHRL.

212.    Alderman discharged, expelled, barred, and/or discriminated against Mr. Maher in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Maher under the NYCHRL.  Alderman further aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYCHRL.

213.    Craig discharged, expelled, barred, and/or discriminated against Mr. Maher in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Maher under the NYCHRL.  Craig further aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYCHRL.

214.    Defendants' have engaged in retaliation with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

215.    As a direct and proximate result of the Defendants' violation of the NYCHRL, Mr. Maher has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

216.    Mr. Maher seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, uncapped compensatory damages (including, but not limited

to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), emotional distress damages, punitive damages, reinstatement with full benefits and seniority, interest, attorneys' fees, and costs.

## COUNT VII

**(Retaliation for Engaging in Protected Activity in Violation of New York State Human Rights Law, Executive Article 15, Section 296)**

**Mr. Maher v. All Defendants (Hines, Hawkins, Prior, Alderman, and Craig)**

217.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

218.    Mr. Maher engaged in protected activity under the NYSHRL, including, but not limited to, opposing, voicing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Defendants due to Mr. Maher's sexual orientation and/or age.

219.    The Defendants discriminated against and/or retaliated against Mr. Maher for opposing one or more acts or practices made unlawful by the NYSHRL, including, but not limited to, the aforementioned protected activity, by subjecting Mr. Maher to a harassing and otherwise hostile work environment, failing to promote Mr. Maher into one or more leadership roles for which he was qualified, demoting Mr. Maher, not assigning Mr. Maher to an additional project, and/or terminating Mr. Maher's employment.

220.    Hawkins discharged, expelled, barred, and/or discriminated against Mr. Maher in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Maher under the NYSHRL.  Hawkins further aided, abetted, incited, coerced, and/or compelled

the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYSHRL.

221.    Prior discharged, expelled, barred, and/or discriminated against Mr. Maher in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Maher under the NYSHRL.  Prior further aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYSHRL.

222.    Alderman discharged, expelled, barred, and/or discriminated against Mr. Maher in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Maher under the NYSHRL.  Alderman further aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYSHRL.

223.    Craig discharged, expelled, barred, and/or discriminated against Mr. Maher in his compensation, conditions, and/or privileges of employment based on rights afforded to Mr. Maher under the NYSHRL.  Craig further aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYSHRL.

224.    Defendants' have engaged in retaliation with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

225.    As a direct and proximate result of the Defendants' violation of the NYSHRL, Mr. Maher has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

226.    Mr. Maher seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), lost benefits, reduced earning capacity, other financial damages, uncapped compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), emotional distress damages, punitive damages, reinstatement with full benefits and seniority, interest, attorneys' fees, and costs.

## COUNT IX

### (Retaliation in Violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq.)

### Mr. Maher v. the Company

227.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

228.    Mr. Maher engaged in protected activity under the ADEA, including, but not limited to, (i) opposing, voicing protected concerns, and/or engaging in other protected activity regarding a hostile work environment based on age and/or (ii) opposing, voicing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Defendants due to Mr. Maher's age.

229.    The Company discriminated against and/or retaliated against Mr. Maher for opposing, voicing protected concerns, and/or engaging in other protected activity related to one or more practices made unlawful by the ADEA by subjecting Mr. Maher to adverse actions, including, but not limited to, subjecting Mr. Maher to a harassing and otherwise hostile work

environment, failing to promote Mr. Maher into one or more leadership roles for which he was qualified, demoting Mr. Maher, not assigning Mr. Maher to an additional project, and/or terminating Mr. Maher's employment.

230.    The Company unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Maher's exercising of, or enjoyment of, one or more rights granted by the ADEA.

231.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Maher.  The Company's actions were willful.

232.    As a direct and proximate result of the Company's violations of the ADEA, Mr. Maher has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

233.    Mr. Maher seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), liquidated damages, reinstatement with full benefits and seniority, attorneys' fees, interest, and costs.

## COUNT X

### (Retaliation in Violation of 42 U.S.C. §§ 2000e et seq.)

### Mr. Maher v. the Company

234.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

235.    Mr. Maher opposed a practice made unlawful by Title VII, including by (i) opposing, voicing protected concerns, and/or engaging in other protected activity regarding a hostile work environment based on sex and/or sexual orientation and/or (ii) opposing, voicing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Defendants due to Mr. Maher's sex and/or sexual orientation.

236.    The Company discriminated against and/or retaliated against Mr. Maher for opposing one or more practices made unlawful by Title VII, including, but not limited to, by subjecting Mr. Maher to adverse actions, including, but not limited to, subjecting Mr. Maher to a harassing and otherwise hostile work environment, failing to promote Mr. Maher into one or more leadership roles for which he was qualified, demoting Mr. Maher, not assigning Mr. Maher to an additional project, and/or terminating Mr. Maher's employment.

237.    The Company acted with malice and/or reckless indifference to the federally protected rights of Mr. Maher.

238.    As a direct and proximate result of the Company's violations of Title VII, Mr. Maher has suffered and continue to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

239.    Mr. Maher seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, emotional distress damages, additional compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of

enjoyment of life, and other nonpecuniary losses), punitive damages, reinstatement with full benefits and seniority, attorneys' fees, interest, and costs.

## COUNT XI

**(Retaliation and Interference with Rights Under the Family and Medical Leave Act – 29 U.S.C. § 2615)**

**Mr. Maher v. All Defendants (Hines, Hawkins, Prior, Alderman, and Craig)**

240.    Mr. Maher incorporates all paragraphs above and below as if set forth fully herein.

241.    The Company is (and all relevant times was) engaged in an industry affecting commerce.

242.    Upon information and belief, at all relevant times, the Company employed 50 or more employees for 20 or more calendar weeks in the current and/or proceeding calendar years.

243.    As such, the Company is (and at all relevant times was) an employer under the FMLA.

244.    Hawkins, Prior, Alderman, and Craig were all employers under the FMLA because they had the power to hire and/or fire Mr. Maher, supervised and controlled Mr. Maher's conditions of employment including his work schedule, played a role in determining Mr. Maher's rate and method of payment, and/or played a role in maintaining Mr. Maher's employment records.

245.    Mr. Maher was an eligible employee under the FMLA because at all relevant times he had worked for the Company for 12 or more months and had worked in excess of 1,250 hours within the past 12-month period.  In addition, the Company employed 50 or more employees within 75 miles of the worksite at which Mr. Maher was based.

246.    Mr. Maher requested and utilized FMLA protected leave for a qualifying reason, to wit, baby bonding.

247.    Furthermore, the Defendants, including by and through their agents, retaliated and/or discriminated against Mr. Maher for requesting and/or utilizing FMLA leave and for engaging in other activity protected by the FMLA, by subjecting Mr. Maher to a harassing and otherwise hostile work environment, failing to promote Mr. Maher into one or more leadership roles for which he was qualified, demoting Mr. Maher, not assigning Mr. Maher to an additional project, and/or terminating Mr. Maher's employment.

248.    The Defendants' actions, including their violations of the FMLA, were willful and in bad faith.

249.    As a direct and proximate result of the Defendants' violations of the FMLA, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

250.    The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, reinstatement with full benefits and seniority, interest, attorney's fees, and costs.

## COUNT XII

### (Whistleblower Retaliation – N.Y. Lab. Law § 215)

**Mr. Maher v. All Defendants (Hines, Hawkins, Prior, Alderman, and Craig)**

251.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

252.     At all relevant times, the Company was an employer under the definitions of the New York Labor Laws, including N.Y. Lab. Law § 215.

253.     At all relevant times, Hawkins, Prior, Alderman, and Craig were persons as defined by the New York Labor Laws, including N.Y. Lab. Law § 215.  In addition, Hawkins, Prior, Alderman, and Craig served as agents of the Company during all relevant times.

254.     Mr. Maher engaged in protected activity under N.Y. Lab. Law § 215, including when Mr. Maher raised concerns regarding the Company's discriminatory and retaliatory actions.

255.     The Defendants, including by and through their agents, retaliated and/or discriminated against Mr. Maher for engaging in the above protected activity by subjecting Mr. Maher to one or more adverse actions, including, but not limited to, subjecting Mr. Maher to a harassing and otherwise hostile work environment, failing to promote Mr. Maher into one or more leadership roles for which he was qualified, demoting Mr. Maher, not assigning Mr. Maher to an additional project, and/or terminating Mr. Maher's employment.

256.     As a direct and proximate result of the Defendants' actions, Mr. Maher has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

257.     Mr. Maher seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other

monetary damages, liquidated damages, reinstatement with full seniority and benefits, interest, attorney's fees, and costs.

## COUNT XIII

### (Retaliation Based on Plaintiff's Reproductive Health Decision Making in Violation of New York Labor Law – NY Labor Ch. 31, Art. 7 § 203-E)

### Mr. Maher v. All Defendants (Hines, Hawkins, Prior, Alderman, and Craig)

258.    Mr. Maher incorporates all paragraphs above and below as if set forth fully herein.

259.    The Company is an employer as defined under New York Labor Law Ch. 31, Art. 7 § 203-E.

260.    The Company employed Mr. Maher.

261.    Hawkins is an officer and/or agent of the Company and knowingly permitted the Company to violate the NY Labor Law. As such, Hawkins is individually liable under NY Labor Law Ch. 31, Art. § 203-E.

262.    Prior is an officer and/or agent of the Company and knowingly permitted the Company to violate the NY Labor Law. As such, Prior is individually liable under NY Labor Law Ch. 31, Art. § 203-E.

263.    Alderman is an officer and/or agent of the Company and knowingly permitted the Company to violate the NY Labor Law. As such, Alderman is individually liable under NY Labor Law Ch. 31, Art. § 203-E.

264.    Craig is an officer and/or agent of the Company and knowingly permitted the Company to violate the NY Labor Law. As such, Craig is individually liable under NY Labor Law Ch. 31, Art. § 203-E.

265.    Mr. Maher engaged in decisions and activity protected under the New York Labor law, including, but not limited to, making decisions related to his reproductive health including, but not limited to, having children through surrogacy and/or seeking time off from work due to birth of said children.

266.    In violation of NY Labor Law Ch. 31, Art. § 203-E, the Defendants then retaliated against Mr. Maher for making decisions related to his reproductive health (including the above-referenced activities and decisions), including, but not limited to, subjecting Mr. Maher to a harassing and otherwise hostile work environment, failing to promote Mr. Maher into one or more leadership roles for which he was qualified, demoting Mr. Maher, not assigning Mr. Maher to an additional project, and/or terminating Mr. Maher's employment.

267.    The Defendants' actions against Mr. Maher were in bad faith. The Defendants acted willfully and/or with reckless disregard for the state protected rights of Mr. Maher.

268.    As a direct and proximate result of the Defendants' actions, Mr. Maher has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

269.    Mr. Maher seeks all damages to which he is entitled, including, but not limited to, reinstatement, compensatory damages (including, but not limited to, emotional distress damages, reduced earning capacity, lost compensation and benefits, including back pay and front pay), liquidated damages, interest, attorneys' fees and costs.

## COUNT XIV

### (Failure to Pay Wages in violation of NYLL §§ 191, 193, and 198)

### Mr. Maher v. Hines

270.    Mr. Maher incorporates all paragraphs above and below as if set forth fully herein.

271.    As of April 2023, Mr. Maher had earned a $300,000 project completion bonus.

272.    This bonus was a sum certain and was already vested as the project was certified complete by Hines.

273.    In or around July 2023, Hines paid Mr. Maher one third of the project completion bonus, with the remaining $200,000 left unpaid.

274.    In or around August 2023, Hines terminated Mr. Maher in a clearly retaliatory fashion and refused to pay Mr. Maher the remainder of his project completion bonus.  Indeed, as of present, Hines has not paid, and Mr. Maher has not received, the remaining $200,000 from the project completion bonus.

275.    As a direct and proximate result of Hines's acts or omissions, Mr. Maher has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits and interest.

276.    Mr. Maher seeks all damages to which he is entitled, including, but not limited to, unpaid wages, lost compensation and benefits, liquidated damages, interest, attorney fees, and costs.

WHEREFORE, the Plaintiff, Dominic Maher, respectfully requests that this honorable court:

A.  Schedule this matter for trial by jury;

B.  Find the Defendants liable on all counts;

C.  Award the Plaintiff his lost compensation and benefits (including, but not limited to, back pay and front pay),

D.  Award the Plaintiff other monetary damages, including damages for his

diminished earning capacity and injury to reputation;

E.  Award the Plaintiff emotional distress damages;

F.  Award the Plaintiff compensatory damages (including, but not limited to, future

pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss

of enjoyment of life, and other nonpecuniary losses);

G.  Award the Plaintiff liquidated damages;

H.  Award the Plaintiff punitive damages;

I.  Award the Plaintiff his reasonable attorneys' fees;

J.  Award the Plaintiff interest and costs;

K.  Reinstatement of the Plaintiff's employment, with restoration of seniority and

benefits;

L.  Award the Plaintiff all other damages to which he is entitled; and

M.  Grant such further relief as is just and equitable.

Respectfully Submitted,

DOMINIC MAHER

By his attorneys,

THE LAW OFFICES OF WYATT &
ASSOCIATES P.L.L.C

Date:  February 4, 2025            By:   */s/ Michael R. Varraso*

Michael R. Varraso
mvarraso@wyattlegalservices.com
NY State Bar: 5619291
NDNY No.: 701795

Benjamin J. Wyatt

BWyatt@Wyattlegalservices.com
NY State Bar: 5604590
NDNY No.: 700752


The Law Offices of Wyatt & Associates,
P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1112
Facsimile: (603) 685-2868

New York Office:
418 Broadway, 2nd Floor
Albany, NY 12207