UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
                                                                      :
DOMINIC MAHER,                                                        :
                                                                      :
                            Plaintiff,                                :
                                                                      :
            -v-                                                       :            25 Civ. 1006 (JPC)
                                                                      :
HINES INTERESTS LIMITED PARTNERSHIP, *et al.*,                        :            OPINION AND ORDER
                                                                      :
                            Defendants.                               :
                                                                      :
----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Dominic Maher brings this action against his former employer, Hines Interests Limited Partnership ("Hines"), and four of his former co-workers, Sarah Hawkins, Matt Prior, Jason Alderman, and Tommy Craig. He brings causes of action under federal, state, and city law, alleging that Defendants discriminated against him based on his age and sexual orientation, retaliated against him for engaging in various activities protected under state and federal law, and failed to pay him all wages he was owed. Defendants now move to partially dismiss the Amended Complaint. For reasons explained below, Defendants' motion is granted in part and denied in part. The Court dismisses Maher's retaliation claim under the Family and Medical Leave Act ("FMLA") but otherwise denies Defendants' motion.

## I. Background

**A.    Facts[1]**

Maher was hired by Hines as a Project Manager in October 2014.  Am. Compl. ¶ 14.  At the time, Maher was over forty years old.  *Id.* ¶ 15.  Maher is gay, but he did not disclose that fact prior to his hiring.  *Id.* ¶¶ 15, 19.  Maher's employment at Hines initially went well.  *See id.* ¶ 20.  He was promoted to Vice President in June 2015, and then to Managing Director in June 2017.  *Id.* ¶ 21.

Beginning around 2018, however, Maher's co-workers started to make references to his age and sexual orientation.  In 2018, Tommy Craig, who was the head of Hines's New York office, discussed with Maher "changes being made at Hines, including the promotion of younger employees and the replacing of older employees."  *Id.* ¶¶ 29, 40.  Craig also "frequently asserted [that] Maher was 'gay' in an insulting and belittling tone[] and permitt[ed] others[] to call [him] gay using a negative tone and manner."  *Id.* ¶ 42.  Similarly, in February 2019, after Maher complimented another person's hair, one of the company's construction managers remarked, "you gay guys always look at people that way; that's how you homos are."  *Id.* ¶¶ 30-31.  On Zoom meetings during the COVID-19 pandemic, Craig "occasionally berated Mr. Maher with homophobic slurs" with hundreds of employees on the calls.  *Id.* ¶¶ 44-46.

Maher alleges that, at various points during his employment at Hines, he was denied opportunities on account of his age and sexual orientation.  In May 2019, Maher was passed over for a promotion in favor of Bevin Littlehale, a younger, heterosexual co-worker with three decades

---

[1] The facts herein are taken from the Amended Complaint, Dkt. 13 ("Am. Compl."), and are assumed to be true for the purposes of this Opinion and Order.  *See Interpharm, Inc. v. Wells Fargo Bank, N.A.*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor").

fewer of experience. *Id.* ¶¶ 23, 32-33.[2]  Maher also contends that he was denied opportunities in connection with a project referred to in the Amended Complaint as the "2330 Broadway Project." *Id.* ¶ 34.  Maher was assigned to the 2330 Broadway Project in around 2019.  *Id.*  Maher initially took on a leadership role with this project, which had been severely over budget, and within months he succeeded in reducing the project's budget by approximately 12%.  *Id.* ¶¶ 35-36.  But then, in 2021, Tyler Swiggett, a heterosexual Hines employee who was junior to Maher with three decades fewer of experience, was selected over Maher to head the 2330 Broadway Project.  *Id.* ¶¶ 38-39, 48-49.

Meanwhile, Maher had decided to have two children through surrogate mothers.  *Id.* ¶ 52. His first child, a boy, was born in early May 2021.  *Id.* ¶ 57.  In advance of his son's birth, Maher disclosed to Hines that he was having a child and that he planned to take two weeks off following the birth.  *Id.* ¶¶ 52-53.  The company approved Mr. Maher's leave under the FMLA, and Maher accordingly took leave from approximately May 1, 2021 through May 15, 2021.  *Id.* ¶¶ 56, 58.

While on leave, Maher announced his son's birth to Craig via video conference but did not disclose that his son was born through a surrogate.  *Id.* ¶¶ 59, 63.  Craig responded with "a diatribe of offensive remarks," telling Maher "that is not your son" and that the mother "must have had an affair with another man."  *Id.* ¶ 61.  A few months later, on or around November 2, 2021, while eating lunch at work with Maher, Craig similarly questioned the newborn boy's paternity.  *Id.* ¶ 65. Maher believes that Craig made these comments because of Craig's perception of Maher's sexual orientation.  *Id.* ¶¶ 62, 66.  Because he felt humiliated by Craig's comments, Maher did not immediately disclose the birth of his second child, a girl, in July 2021.  *Id.* ¶ 64.

---

[2] The Amended Complaint alleges that Littlehale was promoted to Managing Director over Maher, Am. Compl. ¶ 32, yet elsewhere alleges that Maher had already been promoted to Managing Director in June 2017, *id.* ¶ 21.

Eventually, on or around February 15, 2022, Maher disclosed to Sarah Hawkins, a Regional Head Director at Hines and one of Maher's supervisors, that he was gay and had fathered two children via surrogates. *Id.* ¶¶ 26-27, 67. On or around March 2, 2022, Maher also disclosed to Craig that he was gay and that his children were born via surrogacy. *Id.* ¶ 68. Shortly thereafter, Craig told Maher that he did not need to attend an upcoming work conference, replacing Maher with an employee who is heterosexual and thirty years younger. *Id.* ¶¶ 69-72. Maher attended the conference anyway, and "[o]n numerous occasions during th[e] trip, Craig humiliated, ridiculed, and mocked [him], including in front of other [Hines] employees." *Id.* ¶¶ 75-76.

On May 4, 2022, Craig informed Maher that he would be terminated by the end of the year, even though he "had never received any discipline, warnings, or other indications that his performance was anything less than excellent." *Id.* ¶¶ 78-79. Maher met with Hawkins on or around May 26, 2022, to discuss his apparent upcoming termination and what he considered to be harassment and discrimination by Craig. *Id.* ¶ 85. Hawkins assured Maher that no termination plans were in place, notwithstanding what Craig had told him. *Id.* ¶ 87.

On or around June 6, 2022, Maher also raised concerns about his working environment with Andrew Cooke, Senior Vice President of Operations for Hines's East Region. *Id.* ¶¶ 91-92. During this conversation, Maher told Cooke that he was willing move to "an alternative position" at Hines, even if that meant "a voluntary demotion and significant pay cut" if such a transition "was necessary to maintain his employment given the bias of his current managers." *Id.* ¶¶ 93-94. On or around June 9, 2022, Cooke told Maher that he had passed along his concerns to Nami Liberboim in Human Resources. *Id.* ¶¶ 96, 98. Shortly thereafter, Liberboim reached out to Maher to discuss the issue, but took no meaningful action to address Maher's concerns. *Id.* ¶ 99.

Throughout this period, Maher "made several attempts to contact [Jason] Alderman," who was then the co-head of Hines's New York office along with Craig. *Id.* ¶¶ 50-51, 82. On or around

June 16, 2022, Alderman told three other Hines employees "that he had no intention of communicating with [] Maher." *Id.* ¶ 100.  But Maher continued to complain about his perceived discrimination.  On or around June 23, 2022, Maher voiced his concerns to Matt Prior, Hines's Senior Director of Employee Relations, who proceed to investigate Maher's complaints. *Id.* ¶¶ 103, 120-121.

On or around August 1, 2022, Hawkins (the Regional Head Director) reached out to Maher, advising him to stop airing his concerns, asserting that Craig's comments were not meant to be offensive, and encouraging him to reconcile with Craig. *Id.* ¶¶ 105-107.  Hawkins also offered Maher six months of severance pay if he "tendered his immediate resignation." *Id.* ¶ 109.  Maher rejected the resignation offer and also declined to meet with Craig because he previously had attempted reconciliation but Craig responded that he "did not care" and "it was Mr. Maher's problem." *Id.* ¶¶ 108, 110.  During this conversation, Hawkins also informed Maher for the first time that, several months prior, she had "accidentally" decided to restructure personnel in a way that had "incidentally" caused Maher to be demoted. *Id.* ¶¶ 111-112.

On August 2, 2022, Alderman finally met with Maher. *Id.* ¶ 114.  At the meeting, Alderman apologized for "stonewalling" Maher and explained that Craig and a Senior Vice President at Hines "had directed him [] to avoid all forms of communication with [] Maher." *Id.* ¶¶ 111, 114-115.

On August 9, 2022, Littlehale, who by then had become a Managing Director in Hines's Boston office, told Maher that she asked Craig to assign Maher to work with her on a new project in Boston, but Craig ignored her request. *Id.* ¶¶ 47, 116-117.  During their August 9, 2022 conversation, Littlehale, who was also the Managing Director of the 2330 Broadway Project, further informed Maher that he "would receive a project completion bonus of $300,000" once the 2330 Broadway Project was completed. *Id.* ¶¶ 37, 116.

On or around August 11, 2022, Prior sent Maher a letter stating that he would not be terminated in December 2022 (as Craig had told Maher), and instead Maher "would remain an employee until at least May 2023." *Id.* ¶ 118 (emphasis omitted).  Then, on November 15, 2022, Prior emailed Maher to report that, after investigating Maher's complaints, Prior "found no violations of Hines'[s] workplace policies," but nonetheless concluded that "there was evidence [that] Maher could have been managed better." *Id.* ¶¶ 120-121 (internal quotation marks omitted). Prior assured Maher that he would "be managed in a more professional manner going forward." *Id.* ¶ 121 (internal quotation marks omitted).

Craig retired on December 31, 2022, *id.* ¶ 50, but Maher was nonetheless dissatisfied with the company's failure to address his treatment on the job, so he reiterated his complaints "during his annual review process" in or around January 2023, *id.* ¶ 123.  Maher once again complained about his treatment at Hines, including Craig's comments following his son's birth, during a meeting with Alderman and Liberboim on or around March 14, 2023.  *Id.* ¶¶ 124-125.

On or around April 3, 2023, Swiggett, who was leading the 2330 Broadway Project, announced that the project was "officially completed" and that the "first tranche of project bonuses" would be issued in July.  *Id.* ¶ 126.  Consistent with this announcement, Maher was paid $100,000— one-third of the total project completion bonus he was promised—in or around July 2023.  *Id.* ¶ 142. But the 2330 Broadway Project was not in fact completed.  In Alderman's view, the project would not be completed by May 2023, *id.* ¶ 135, and Maher felt it would not be completed until at least September 2023, *id.* ¶ 136.  Mike Ferry, a Senior Vice President of Welltower—a company working alongside Hines on the 2330 Broadway Project—called Maher on or around April 3, 2023 (the same day Swiggett announced the project's completion) to express that he was "extremely dissatisfied with Swiggett's performance."  *Id.* ¶¶ 34, 131, 133.  Ferry told Maher that "Swiggett had allowed discrepancies in the approved staff billing," and that he "was not comfortable with Swiggett's

inexperience and lack of leadership and believed Mr. Maher's continued involvement was important." *Id.* ¶¶ 133-134. On the same phone call, Ferry also "express[ed] concerns about older, tenured employees being laid off by [Hines] or transferred to worse positions." *Id.* ¶ 131. A few weeks later, on or around April 25, 2023, Littlehale told Maher that she shared Ferry's view that Swiggett's performance was "drastically lacking." *Id.* ¶¶ 138-139. Around this same time, Alderman "extended Mr. Maher's employment from May 2023 until at least August 2023, with the ability to continue employment beyond that if another project arose." *Id.* ¶ 135. Maher also relayed to Alderman that Ferry had voiced dissatisfaction with Swiggett and had raised concerns regarding Hines's "seeming replacement of older, more senior employees . . . with younger, less experienced employees." *Id.* ¶ 137.

In the ensuing months, concerns with Swiggett's performance on the 2330 Broadway Project intensified. In or around July 2023, after being "alarmed by comments Swiggett made during a call with Welltower," Ferry expressed to Alderman and Littlehale "his anger that no senior Hines employee was leading" on the project. *Id.* ¶ 143. Around the same time, and then again on or around August 4, 2023, Ferry contacted Maher again to express his frustration with Swiggett, stating that "he lacked confidence in Swiggett's ability to lead." *Id.* ¶¶ 143-144. Ferry also "called a number of senior employees at Hines to raise concerns and express dissatisfaction with Swiggett's performance." *Id.* ¶ 144. Still, Swiggett remained in charge of the project.

On or around August 12, 2023, Steven Diroff, a subordinate of Maher's who is heterosexual and twenty years younger, told Maher that he (Diroff) had been assigned to work on another project, which is referred to in the Amended Complaint as the "1211 Avenue of the Americas Project." *Id.* ¶¶ 145-147. Although this project "was in line with [] Maher's experience, skillset, and past project history," Maher was not assigned to work on it, notwithstanding Alderman's earlier indication that Maher could work on another project should the opportunity arise. *Id.* ¶¶ 135, 148-149.

On or around August 14, 2023, Alderman "offer[ed] to extend [Maher's] employment through the end of September 2023" because his "experience was further needed to complete and finalize the 2330 Broadway [P]roject," but "threatened that [Hines] would revoke its prior severance offer to Mr. Maher if the 2330 Broadway [P]roject was not completed in the near future." *Id.* ¶¶ 150-151.  The same day, Maher responded to Alderman with frustration that he had been passed over for the 1211 Avenue of the Americas Project and "expressed that it seemed clear he . . . was not assigned [that] project in retaliation for the . . . harassment concerns he [had] raised." *Id.* ¶ 152.

Alderman replied to Maher by "suddenly asserting" that Hines had "made the decision to move forward with the separation of [Maher's] employment . . . effective as of 8/31/23." *Id.* ¶ 153. Alderman also told Maher that he "would not receive any further payments [of] the project completion bonus" for the 2330 Broadway Project.  *Id.* ¶ 155.  Consistent with Alderman's reply, Maher was terminated on or around August 31, 2023, and has not received the remaining two-thirds of the $300,000 project completion bonus.  *Id.* ¶¶ 157, 160.

## B.    Procedural History

On or around April 19, 2024, Maher filed a Charge of Discrimination with the New York City Commission on Human Rights ("NYCCHR") and the United States Equal Employment Opportunity Commission ("EEOC").  *Id.* ¶ 161.  On November 13, 2024, Maher requested an administrative convenience dismissal from the NYCCHR, which it granted on or around November 19, 2024. *Id.* ¶¶ 162-163.  The EEOC issued Maher a Notice of Right to Sue on or around December 6, 2024.  *Id.* ¶ 165.

Maher initiated this action on February 4, 2025, Dkt. 1, and filed the Amended Complaint on May 12, 2025, Dkt. 13.  The Amended Complaint alleges: (1) age discrimination under the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(1)(a), against all

Defendants (Count One), Am. Compl. ¶¶ 167-179; (2) age discrimination under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296(1)(a), against all Defendants (Count Two), Am. Compl. ¶¶ 180-188; (3) age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1), against Hines (Count Three), Am. Compl. ¶¶ 189-197; (4) sexual orientation discrimination and harassment under the NYCHRL, N.Y.C. Admin. Code § 8-107(1)(a), against all Defendants (Count Four), Am. Compl. ¶¶ 198-209; (5) sexual orientation discrimination and harassment under the NYSHRL, N.Y. Exec. L. § 296(1)(a), against all Defendants (Count Five), Am. Compl. ¶¶ 210-215; (6) sexual orientation discrimination under Title VII, 42 U.S.C. § 2000e-2(a)(1), against Hines (Count Six), Am. Compl. ¶¶ 216-223;[3] (7) retaliation for opposing sexual orientation and age discrimination under the NYCHRL, N.Y.C. Admin. Code § 8-107(7), against all Defendants (Count Seven), Am. Compl. ¶¶ 224-233; (8) retaliation for opposing sexual orientation and age discrimination under the NYSHRL, N.Y. Exec. L. § 296(7), against all Defendants (Count Eight), Am. Compl. ¶¶ 234-243; (9) retaliation under the ADEA, 29 U.S.C. § 623(d), against Hines (Count Nine), Am. Compl. ¶¶ 244-250; (10) retaliation under Title VII, 42 U.S.C. § 2000e-3(a), against Hines (Count Ten), Am. Compl. ¶¶ 251-256; (11) retaliation under the FMLA, 29 U.S.C. § 2615(a)(1), against all Defendants (Count Eleven), Am. Compl. ¶¶ 257-267; (12) retaliation based on reproductive health decision-making under the New York Labor Law, N.Y. Lab. Law ("NYLL") § 203-E(1), against all Defendants (Count Twelve), Am. Compl. ¶¶ 268-279; and (13) failure to pay wages under the New York Labor Law, NYLL §§ 191, 193, 198, against Hines (Count Thirteen), Am. Compl. ¶¶ 280-285.

---

[3] While Title VII does not explicitly prohibit sexual orientation discrimination, the Supreme Court has held that sexual orientation discrimination is a form of sex discrimination under Title VII. *See Bostock v. Clayton Cnty.*, 590 U.S. 644, 650-52 (2020).

Defendants moved to partially dismiss the Amended Complaint on June 26, 2025. Dkt. 22. Defendants seek dismissal of: (1) the claims of sexual orientation discrimination and harassment in Counts Four, Five, and Six; (2) the claims of retaliation for opposing age discrimination in Counts Seven, Eight, and Nine; (3) the claim of retaliation in violation of the FMLA in Count Eleven; (4) the claim of retaliation based on reproductive health decision-making in Count Twelve; and (5) the claim of failure to pay wages in Count Thirteen. Dkt. 22-1 ("Motion") at 3.[4] Maher opposed Defendants' motion on July 24, 2025, Dkt. 23 ("Opposition"), and Defendants submitted a reply in support of their motion on August 7, 2025, Dkt. 24 ("Reply").[5]

## II. Legal Standard

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although a court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

---

[4] Defendants seek to dismiss these Counts as to all Defendants named in each Count.

[5] Defendants also argue that, "to the extent Counts I through III of the Amended Complaint could be construed to attempt to state [a claim for a hostile work environment based on age], they should be dismissed under Rule 12(b)(6)." Motion at 4. Maher confirmed in his opposition brief that he is not pursuing a hostile work environment theory of age discrimination. Opposition at 2 n.1.

### III.  Discussion

**A.    Sexual Orientation Discrimination (Counts Four, Five, and Six)**

The Court starts with Defendants' motion to dismiss Counts Four, Five, and Six, in which Maher alleges discrimination based on his sexual orientation in violation of Title VII, the NYSHRL, and the NYCHRL, Am. Compl. ¶¶ 198-223.  Motion at 4-9.  A plaintiff's discrimination claim under any of these statutes may be categorized as falling under either of two theories: disparate treatment or hostile work environment.  *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (explaining that the two "discrimination theories available under Title VII" are "disparate treatment (or 'quid pro quo' discrimination) and hostile work environment"); *see also Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 327 (S.D.N.Y. 2020) ("The NYCHRL uses the same framework as Title VII and the NYSHRL, but contains, as to some elements, more liberal pleading and proof standards.").[6]  Broadly speaking, a disparate treatment theory alleges that the plaintiff suffered discrimination as the result of an "adverse employment action," whereas a hostile work environment claim alleges that the plaintiff suffered discrimination as a result of "intimidation, ridicule, [or] insult" in the workplace.  *Alfano*, 294 F.3d at 373.  Maher's claims of

---

[6] On August 12, 2019, "the NYSHRL was amended to direct courts to construe the NYSHRL, like the NYCHRL, 'liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed.'"  *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (quoting N.Y. Exec. Law § 300).  Since then, "[t]he case law . . . has not definitively resolved whether the effect of the 2019 amendment is to make the NYSHRL's standard *identical* to that of the NYCHRL—or merely closer to it."  *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 578 (S.D.N.Y. 2023).  *Compare Syeed v. Bloomberg L.P.*, No. 20 Civ. 7464 (GHW), 2022 WL 3447987, at *6 (S.D.N.Y. Aug. 17, 2022) ("After that amendment, the standard for NYSHRL [claims] aligns with the NYCHRL standard for claims that accrued on or after October 11, 2019."), *reconsideration granted on other grounds sub nom.*, *Ndugga v. Bloomberg L.P.*, 2023 WL 4744183 (S.D.N.Y. July 25, 2023), *with Wellner v. Montefiore Med. Ctr.*, No. 17 Civ. 3479 (KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019) (indicating that the amendment brings the NYSHRL "closer to" the NYCHRL standard).  The Court need not resolve this unclarity to decide Defendants' motion.

discrimination based on his sexual orientation are brought under both disparate impact and hostile work environment theories.  *See* Am. Compl. ¶¶ 200-208 (NYCHRL claim in Count Four), 212-214 (NYSHRL claim in Count Five), 218-222 (Title VII claim in Count Six).

Unlike the NYSHRL and the NYCHRL, "Title VII requires that individuals aggrieved by acts of discrimination file a charge with the EEOC within 180 or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days 'after the alleged unlawful employment practice occurred.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78-79 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e-5(e)(1)).  In this context, a "practice" is "a discrete act or single 'occurrence,'" and "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111, 113 (2002).  There is an exception to this rule, however, for hostile work environment claims, which, by "[t]heir very nature[,] involve[] repeated conduct." *Id.* at 115; *see also King v. Aramark Servs. Inc.*, 96 F.4th 546, 560 (2d Cir. 2024) (explaining that a hostile work environment claim may be the result of "a constellation of events over time").  "[T]he continuing violation doctrine provides that such claims do not accrue—and the statute of limitations period does not begin to run—until the last discriminatory act in furtherance of the hostile work environment." *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 88 (2d Cir. 2024) (internal quotation marks omitted).

Defendants present three arguments for why they believe Maher's sexual orientation discrimination claims should be dismissed.  The Court is persuaded by none of them.

First, Defendants challenge the timeliness of the Title VII claim in Count Six because Maher did not file his EEOC charge until April 19, 2024.  Motion at 4-6.  Defendants contend that the most recent instance of alleged harassment against Maher was Craig's questioning of the paternity of Maher's son on or around November 2, 2021, which fell well outside the 300-day limitations period.  *Id.* at 5; *see* Am. Compl. ¶ 65.  But Maher alleges several instances which potentially evince

12

disparate treatment discrimination that fall within the 300-day limitations period, including his firing in August 2023. *See, e.g.*, Am. Compl. ¶¶ 145-149, 152-153, 155, 157. Defendants' motion entirely fails to address whether these alleged incidents show that Maher endured discriminatory acts or experienced a hostile work environment due to his sexual orientation within the limitations period. Without a properly developed argument from Defendants, the Court declines to dismiss Maher's claims on timeliness grounds. *See Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (explaining that a trial court "is not required to consider what the parties fail to point out" (internal quotation marks omitted)); *Albrechtsen v. Bd. of Regents of Univ. of Wis. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002) ("Courts are entitled to assistance from counsel.").

Second, Defendants fault Maher for making only isolated allegations to support his claims of sexual orientation discrimination. Motion at 6-7. Like with their timeliness argument, Defendants maintain that the most recent incident of alleged harassment against Maher prior to his termination occurred on or around November 2, 2021, and that the most recent incident before that allegedly occurred on May 7, 2021, when Craig first questioned the paternity of Maher's son. *Id.* at 6; *see* Am. Compl. ¶¶ 59-61. Defendants argue that such "isolated incidents of unwelcome verbal . . . conduct [are] the type of petty slights and trivial inconveniences that are not actionable even under the more liberal NYCHRL and NYSHRL standard[s]." Motion at 7 (citation modified). A disparate treatment claim may be based on only a single adverse action, however. *See Morgan*, 536 U.S. at 114 ("Each . . . adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"). So even if the incidents of alleged discrimination here were indeed "isolated," that would not provide a basis to dismiss Maher's claims for sexual orientation discrimination.

Finally, Defendants argue that Maher fails to state a claim for disparate treatment discrimination because he relies on the "comparator approach," yet only identifies supposedly

similarly situated employees through "conclusory allegations" based "upon information and belief." Motion at 7-9; *see id.* at 8 ("A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." (citation omitted)). "Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff but he has sufficient data to justify interposing an allegation on the subject." 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1224 (4th ed. 2025). Having worked alongside his co-workers at Hines for several years, Maher has sufficient information to plausibly allege that they are heterosexual, even if he does not yet know that to be the case for certain. *See Kunik v. N.Y.C. Dep't of Educ.*, No. 15 Civ. 9512 (VSB), 2017 WL 4358764, at *10 (S.D.N.Y. Sept. 29, 2017) (denying motion to dismiss age discrimination claim when the plaintiff "identifie[d] her comparators . . . by name, and [alleged] upon information and belief that they are younger"); *cf. Boykin v. KeyCorp*, 521 F.3d 202, 206, 215 (2d Cir. 2008) (holding that "the district court improperly faulted [the plaintiff] for pleading facts alleged 'upon information and belief'" when she alleged "upon information and belief, [that] persons who were not members of the protected classes received loans and were more favorably treated in the loan application process than [the plaintiff] with regard to the same or similar types of properties" (citation modified)).

Accordingly, the Court is not persuaded by Defendants' arguments for dismissing the sexual orientation discrimination claims in Counts Four to Six. Their motion to dismiss those Counts therefore is denied.

B.      **Retaliation for Opposing Age Discrimination (Counts Seven, Eight, and Nine)**

In Counts Seven, Eight, and Nine, Maher alleges that he suffered retaliation for engaging in protected activity, in violation of the NYCHRL, the NYSHRL, and the ADEA.  Am. Compl. ¶¶ 224-250.  Defendants' motion to dismiss these Counts also is denied.

Under the ADEA it is "unlawful for an employer to discriminate against any of [its] employees . . . because such individual . . . has opposed," *inter alia*, "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1), (d).  Retaliation under the ADEA therefore "requires that the adverse action would not have occurred in the absence of the [employer's] retaliatory motive."  *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 307 (2d Cir. 2021) (internal quotation marks omitted).  "Causation may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity."  *Id.* (citation omitted).

The NYCHRL and the NYSHRL similarly prohibit "retaliat[ing] or discriminat[ing] in any manner against any person because such person has . . . opposed any practice forbidden under this chapter," which, in both statutes, includes age discrimination.  N.Y.C. Admin. Code § 8-107(7); *see* N.Y. Exec. L. § 296(7) (similar).  But unlike the ADEA, the NYCHRL and the NYSHRL have rules of construction requiring that their provisions "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof."  N.Y.C. Admin. Code § 8-130; *see* N.Y. Exec. L. § 300 (similar).  As a result, the NYCHRL has been construed such that "'opposing any practice' can include situations where a person . . . merely made clear her disapproval of the defendant's discrimination by communicating to him, in substance, that she thought his treatment

15

of the victim was wrong." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (citation modified).[7]

Defendants argue that Maher's claims of retaliation for opposing age discrimination should be dismissed because too great a gap in time elapsed between Maher's termination and his opposition to the discrimination. Motion at 9-10. Defendants contend that the latest point when Maher alleges he spoke out against perceived age discrimination was on or around April 24, 2023, when he expressed concern to Alderman about Hines's "seeming replacement of older, more senior employees . . . with younger, less experienced employees." *Id.* at 9 (quoting Am. Compl. ¶ 137). Maher was then fired on or around August 31, 2023. *Id.* ¶¶ 153, 157. Defendants argue that this "more than four-month gap" categorically "precludes an inference of causation," for purposes of a retaliation claim, adding merely that "courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation." Motion at 9-10 (citation modified).

The Court declines to dismiss Counts Seven, Eight, and Nine based on that argument. Initially, Defendants fail to meaningfully engage on whether Maher's alleged conversation with Alderman on August 14, 2023, during which he complained about his treatment at Hines, *see* Am. Compl. ¶¶ 150-152, was protected activity. *See* Reply at 7-8. But even assuming that the last occasion Maher opposed age discrimination was on April 24, 2023, Defendants do not explain why, in this particular case, the roughly four-month gap between Maher's protected conduct and his termination is too long to permit an inference of causation. Although each case is different, the Second Circuit has found that even five months can allow for a causal relationship between an

---

[7] It also remains an open question whether, or to what extent, retaliation claims under the NYSHRL are now assessed under the same standard as the NYCHRL after the 2019 amendment. *See supra* n.6.

employee's opposition to discrimination and the employer's adverse employment action. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("[T]his Court has not drawn a bright line defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation."). And while Defendants note several decisions that have found a four-month gap to be too long for an inference of causation, *see* Motion at 10 (collecting cases), they fail to explain why the relevant factual allegations here are more analogous to the ones in those cases than in the cases Maher cites, *see* Opposition at 18 (collecting cases). *Cf. Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 406 (6th Cir. 1992) ("What concept of judicial economy is served when judges . . . are required to do the work of a party's attorney?"). Defendants' motion to dismiss Counts Seven, Eight, and Nine therefore is denied.

## C.      FMLA Retaliation (Count Eleven)

In Count Eleven, Maher alleges that Defendants engaged in retaliation in violation of the FMLA because they "retaliated and/or discriminated against Mr. Maher for requesting and/or utilizing FMLA leave and for engaging in other activity protected by the FMLA." Am. Compl. ¶ 264; *see id.* ¶¶ 257-267. The Court agrees with Defendants that the Amended Complaint does not state a claim of FMLA retaliation.

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). One such right is the entitlement of "an eligible employee . . . to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of the birth of a son or daughter of the employee and in order to care for such son or daughter." *Id.* § 2612(a). In other words, the FMLA "prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised [the right to take leave when a child is born]." 29 C.F.R. § 825.220(c).

17

Maher has not alleged facts which create a plausible inference that his decision to take FMLA-protected leave was the cause of any discriminatory treatment or adverse action he may have suffered.  In his opposition to Defendants' motion to dismiss, Maher argues that there is a close temporal proximity between when he took leave for his son's birth and when Craig harassed him in May 2021, Opposition at 20, but that instance of alleged harassment concerned whether Maher had fathered his son—not Maher's decision to take leave for two weeks to accommodate his son's birth.  *See* Am. Compl. ¶¶ 59-61.  In fact, based on Maher's own allegations, Hines provided him with "FMLA paperwork" and approved his leave request.  *Id.* ¶ 56.  The Amended Complaint also does not allege that any employee at Hines subsequently mentioned his decision to take such leave.  Thus, given the absence of allegations that Maher endured discrimination or retaliation as a result of taking FMLA leave, Count Eleven is dismissed.

**D.      Claims Under New York Labor Law (Counts Twelve and Thirteen)**

Maher's last two claims are brought under the New York Labor Law.  Count Twelve alleges that Defendants retaliated against Maher for "making decisions related to his reproductive health including, but not limited to, having children through surrogacy and/or seeking time off from work due to birth of said children," Am. Compl. ¶ 275, in violation of New York Labor Law Section 203-E.  *Id.* ¶¶ 268-279.  In Count Thirteen, Maher alleges that Defendants failed to pay wages he was owed, referring to the remaining $200,000 bonus for the completion of the 2330 Broadway Project, in violation of New York Labor Law Sections 191, 193, and 198.  *Id.* ¶¶ 280-285.  The Court orders Maher to show cause why it should exercise supplemental jurisdiction over either New York Labor Law claim.

Starting with Count Twelve, the Court is not aware of a single reported case interpreting or applying the relevant statutory language of New York Labor Law Section 203-E, a relatively

18

recently enacted statute that covers retaliation based on reproductive health decisions.[8]   Nor have the parties presented developed arguments regarding the statute in their briefs.  Under 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the claim raises a novel or complex issue of State law."  Maher is ordered to show cause, within fourteen days of this Opinion and Order, why the Court should not decline to exercise supplemental jurisdiction over Count Twelve, allowing a New York state court to interpret the statute in the first instance.

Maher alleges in Count Thirteen that Defendants failed to pay him all wages he had earned. A district court with original jurisdiction over an action may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  Claims form part of the same case or controversy when they derive from a "common nucleus of operative fact."  *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 332 (2d Cir. 2011) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). Thus, in determining whether to exercise supplemental jurisdiction, courts "have traditionally asked whether the facts underlying the federal and state claims substantially overlapped or the federal claim necessarily brought the facts underlying the state claim before the court."  *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (citation modified).  The Court may not exercise supplemental jurisdiction "when the federal and state claims rest[] on essentially

---

[8] In *Slattery v. Hochul*, 61 F.4th 278 (2d Cir. 2023), the Second Circuit sustained New York Labor Law Section 203-E against freedom of expressive association, freedom of speech, free exercise of religion, and void for vagueness challenges, and noted that "the law prohibits accessing an employee['s] medical record to determine whether that employee had used birth control or not, or had an abortion or carried a child to term," *id.* at 294 (internal quotation marks omitted), but did not otherwise interpret the meaning of a "reproductive health decision" or apply it to a case such as this.

unrelated facts." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000). Also within fourteen days of this Opinion and Order, Maher is directed to show cause why the allegations that support Count Thirteen derive from a common nucleus of operative fact as his federal claims.

### IV. Conclusion

For the above reasons, Defendants' motion to dismiss is granted with respect to Count Eleven and denied as to Counts Four, Five, Six, Seven, Eight, and Nine. Maher is directed to show cause why the Court should exercise supplemental jurisdiction over Counts Twelve and Thirteen within fourteen days of this Opinion and Order. Defendants may respond to Maher's submission within fourteen days.

Counsel for all parties are ordered to appear before the undersigned for a conference to discuss next steps in this case on April 16, 2026, at 4:00 p.m. At the scheduled time, counsel should call (855) 244-8681, access code 2302 755 2307. By April 9, 2026, the parties must submit a joint letter, not to exceed three pages, addressing (1) a brief description of any discovery that already has taken place, as well as a brief description of any discovery which will be necessary for the parties to engage in meaningful settlement negotiations; (2) a list of all prior settlement discussions, including the date, the parties involved, and the approximate duration of such discussions, if any; (3) whether the parties request a referral to the Honorable Valerie Figueredo for a settlement conference or, alternatively, to the Court-annexed mediation program; (4) the estimated length of trial; and (5) any other information that the parties believe may assist this Court in resolving the action. By April 9, 2026, the parties also must submit a proposed case management plan and scheduling order, a template of which is available at https://www.nysd.uscourts.gov/hon-john-p-cronan.

20

The Clerk of Court is respectfully directed to close Docket Number 22.

SO ORDERED.

Dated: March 30, 2026
New York, New York

_____
JOHN P. CRONAN
United States District Judge